UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
-----------------------------------------------:
RICHARD QUINT                                  :
                                               :
                                               :        PRISONER
        v.                                     :        Case No. 3:05cv937 (PCD)(JGM)
                                               :
                                               :
THERESA LANTZ, et al.                          :        DATE: FEBRUARY 2, 2006
-----------------------------------------------:
```

### RECOMMENDED RULING ON MULTIPLE MOTIONS FOR TEMPORARY RESTRAINING ORDER OR PRELIMINARY INJUNCTION

Plaintiff Richard Quint ["Quint"] filed this civil rights action pro se and in forma pauperis pursuant to 28 U.S.C. § 1915 on June 9, 2005 (Dkt. #1), followed by an Amended Complaint filed on December 8, 2005 (Dkt. #27). He alleges that defendants have been deliberately indifferent to his serious medical needs. Defendants filed their Answer and Defenses on December 21, 2005. (Dkt. #30).

Quint has filed three motions for injunctive relief relating to his medical treatment. In the first two motions, both filed October 27, 2005 (Dkts. ##12-13), Quint seeks a temporary restraining order and preliminary injunction requiring, first, that he be allowed to retain until the end of his sentence a wedge cushion pillow and egg crate mattress, and second, that he be prescribed Tylenol #3 for pain and that the prescription not be discontinued without his prior consent.[1] On November 3, 2005, Senior U.S. District Judge

---

[1] Attached to Dkt. #12 is an affidavit from plaintiff, dated October 20, 2005. Attached to Dkt. #13 is a brief by plaintiff, along with two pages of his medical records and copies of case law. On November 4, 2005, plaintiff filed additional pages from his medical records. (Dkt. #14). On November 21 and 29, 2005, plaintiff filed additional pages from his medical records. (Dkts. ##23-24).

Peter C. Dorsey referred these motions to this Magistrate Judge. (Dkt. #15). In the third motion, filed on December 1, 2005 (Dkt. #25), Quint seeks the above relief as well as orders for examination by an orthopedist and a CT scan.[2] On December 28, 2005, defendants filed their brief in opposition. (Dkt. #35).[3] After his motion for extension of time was granted (Dkt. #41), plaintiff filed his reply briefs and affidavits in support. (Dkts. ##42-44).[4]

"[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'" Buffalo Forge Co. v. Ampco-Pittsburgh Corp., 638 F.2d 568, 569 (2d Cir. 1981) (quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977)). In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity." Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976).

In the Second Circuit, the standard for injunctive relief is well established. To

---

[2] Attached were copies of additional medical records, and three weeks later, on December 22, 2005, plaintiff filed more medical records. (Dkt. #33).

[3] Attached is an affidavit of Dr. Carson Wright, sworn to December 19, 2005; affidavit of Dr. Edward A. Blanchette, sworn to December 21, 2005; copy of Dr. Blanchette's Curriculum Vitae; copies of medical records and copies of plaintiff's Utilization Review Reports from February 4, 1999 to December 16, 2005 .

[4] Attached to Dkt. #42 is an affidavit of plaintiff, sworn to January 9, 2006 and three attachments: copies of plaintiff's medical records, request forms, letter and grievances from September 22, 2002 to the present (Att. A); copies of the descriptions of Codeine Phosphate, Tramadol Hydrochloride, Carbamazepine, Cyclobenzaprine Hydrochloride and Diflunisal (Att. B); and copies of plaintiff's Habeas Petition, dated September 9, 2002; copy of the Memorandum of Decision, dated February 5, 2003; and copy of plaintiff's sentencing Mittimus, dated May 5, 2003 (Att. C) .

warrant preliminary injunctive relief, the moving party "must demonstrate (1) that it will be irreparably harmed in the absence of an injunction, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and a balance of hardships tipping decidedly in its favor." Brewer v. West Irondequoit Central Sch. Dist., 212 F.3d 738, 743-44 (2d Cir. 2000).

Although a hearing is generally required on a properly supported motion for preliminary injunction, oral argument and testimony are not required in all cases. See Drywall Tapers & Pointers Local 1974 v. Local 530, 954 F.2d 69, 76-77 (2d Cir. 1992)(citation omitted). Where, as here, "the record before a district court permits it to conclude that there is no factual dispute which must be resolved by an evidentiary hearing, a preliminary injunction may be granted or denied without hearing oral testimony." 7 James W. Moore, et al., Moore's Federal Practice ¶ 65.04[3] (2d ed. 1995). Upon review of the record, the court determines that oral testimony and argument are not necessary in this case.

Although Quint has attached copies of some medical records to his complaint and motions, and appears to have attached most of his medical file to his reply to defendants' opposition to these motions, he has provided no medical evidence demonstrating a medical need for the pillow and mattress, medications or the additional treatment he seeks. The medical records indicate that, although Quint has complained of back pain for several years, he has been observed working and exercising in no apparent distress.[5] In

---

[5] See note 6 infra.

addition, Quint has provided a medical entry from Dr. Stein which clearly characterizes Quint as manipulative and drug-seeking. (Dkt. #42, entries dated 11/21/02 & 12/12/02). In opposition, defendants have filed copies of Quint's medical records and affidavits from Drs. Wright and Blanchette. Neither the physician's opinions nor the medical records support Quint's claimed need for stronger pain medication, the pillow and mattress or other medical treatment.

Although the medical records do contain an order for the pillow and mattress, there is no entry suggesting that either item is medically required. Another entry suggests that medical staff may have acceded to Quint's demands to placate him and not because of a real medical need. (See Attachment to Dkt. #35-2, entry dated 9/30/05, suggesting that Quint is permitted to have the mattress and pillow if he behaves appropriately.) Dr. Wright states in his affidavit that a wedge pillow and egg crate mattress are not prescribed for back pain. The mattress especially is used to avoid bed sores. (See Dkt. # 35-2, Affidavit of Carson Wright, M.D., at ¶ 9.) There is no evidence suggesting that Quint is bed-ridden.

Regarding the demand for stronger medication, Dr. Wright consulted with staff at the University of Connecticut Health Center in the areas of anesthesia and orthopedics. He was advised that he should continue the medication he had been prescribing and use the Tylenol #3 only for short periods when needed. (See Dkt. #35-2, Affidavit of Carson Wright, M.D., at ¶ 5 and attached medical record entry by Dr. Wright on 12/13/05.) As noted above, Quint has provided no contrary medical evidence. In addition, the medical records contain many observations of Quint that contradict his claims of severe back pain

and document many instances of manipulative behavior.[6]

To support his claim for a CT scan and orthopedic consultation, Quint points to the results of a September 2, 2005 x-ray of his lumbar spine. (See Dkt. #25, first attachment.) The report indicates that there is evidence of a compression fracture, probably related to an old or chronic event. The radiologist recommended correlation with Quint's medical history and clinical presentation to determine whether the fracture was the result of an acute event. If so, he posited that a CT scan might be helpful. Dr. Wright states in his affidavit that Quint displays no difficulty ambulating or climbing stairs and often does not appear to be in pain at all. (See Dkt. #35-2, Affidavit of Carson Wright, M.D., at ¶¶ 4, 7, 8.) After reviewing Quint's medical records, Dr. Blanchette states that Quint's clinical presentation and medical history indicate that he does not suffer from any acute condition. (See Dkt. # 35-1, Affidavit of Edward A. Blanchette, M.D., at ¶¶ 4, 5, 8.) Thus, the

---

[6]For example, the medical records attached to Quint's reply include the following entries: (1) On October 24, 2002, Quint's history of back pain was determined not consistent with a disc injury because the back pain did not become an issue until after Quint's nasal trauma, also suffered in the fall in the shower, and it had improved (Dkt. #42, Att. A at 43); (2) on June 4, 2003, Quint was observed in the recreation yard standing in the same position for more than five minutes at a time, twisting his upper torso and moving about. He appeared in no distress or discomfort until he realized that he was being observed. At that time, Quint began rocking or leaning to one side (Dkt. #42, Att. A at 113); (3) on July 25, 2004 Quint was observed lying on his bunk with his feet against the wall, knees at a 90 degree angle and fingers laced behind his head doing rapid sets of abdominal crunches in no apparent distress; and (4) on August 22, 2004, correctional staff took a picture of a sign Quint had placed in the window of his cell and attempted to unlock the cell door to retrieve the sign. Before the correctional officer could unlock the door, Quint got out of bed, went to the cell door and destroyed the sign. Quint's movements were described as smooth and quick with no signs of impairment, pain or disability. (Dkt. #42, Att. A at 288).

suggestion on the x-ray report is insufficient to require a CT scan and orthopedic consultation.

When considering whether medication is in an inmate's interest, the courts generally defer to the judgment of medical personnel. See Washington v. Harper, 494 U.S. 210, 231-32 (1990)(a medical professional, with the benefit of clinical observation, is in a better position than a judge to make decisions regarding the appropriateness of medication); Kulak v. City of New York, 88 F.3d 63, 75 (2d Cir.1996)(court should honor doctor's treatment decisions unless decisions so depart from accepted judgment, practice or standards that it appears that doctor did not base decision on medical judgment).  On the current record, Quint has not shown that the medical decisions in this case so depart from accepted medical judgment as to require the court to disregard those orders.  Thus, the court concludes that Quint has not demonstrated that he will suffer irreparable harm should his requests be denied.  Thus, Quint's motions (**Dkts. ## 12, 13, 25**) are **DENIED** without prejudice.

Any objections to this recommended ruling must be filed with the Clerk of the Court within **ten (10)** days of the receipt of this order. Failure to object within ten (10) days may preclude appellate review. See 28 U.S.C. § 636(b)(1); Rules 72, 6(a) and 6(e) of the Federal Rules of Civil Procedure; Rule 2 of the Local Rules for United States Magistrates; Small v. Secretary of H.H.S., 892 F.2d 15 (2d Cir. 1989)(per curiam); F.D.I.C. v. Hillcrest Assoc., 66 F.3d 566, 569 (2d Cir. 1995).

Entered this 2nd day of February, 2006, at New Haven, Connecticut.

                                                  /s/
                                JOAN G. MARGOLIS
                                UNITED STATES MAGISTRATE JUDGE